# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LANTZ E. ARNELL,<br><br>                       Plaintiff,<br>  vs.<br><br>JACK LIEB, ESQ. & ASSOCIATES,<br>JUDGE WILLIAM McADAM, *ET AL.*<br><br>                       Defendants. | CASE NO. 08cv441-LAB (RBB)<br><br>**ORDER GRANTING DEFENDANT McADAM'S MOTION TO DISMISS** |

Defendant McAdam, a state court judge, has moved to dismiss with prejudice Plaintiff's claims against him, citing multiple defenses. The other named Defendant has already been dismissed without prejudice pursuant to Fed. R. Civ. P. 4(m). Plaintiff discusses many other wrongdoers whose identities he does not know, but he has not named them as Defendants.

**I.  Background**

Plaintiff previously filed a complaint against Judge McAdam in case number 07cv743-LAB, but withdrew it, claiming he feared for his life when his mother was nearly killed in a staged car accident. Plaintiff's earlier case was based primarily on a neighborhood altercation. Plaintiff argued an elderly man had stabbed him with a long metal sword as part of some kind of conspiracy to assault or murder him. Plaintiff had, however, pleaded guilty to one count of battery and Judge McAdam denied his petition for writ of coram nobis. (Def.'s

Mot. to Dismiss, Exs. A and B (records from *People v. Lantz Arnell*, case no. S188356).) Furthermore, the elderly man he pleaded guilty to assaulting prevailed in a civil suit against him, after the Court struck Arnell's answer. (Def.'s Mot. to Dismiss, Ex. C (record from *Lawrence v. Arnell*, case no. GIS20077).)

Plaintiff now alleges Defendants are part of a vast criminal enterprise which he dubs the Continuing Criminal Enterprise ("CCE"), whose activities include, but are not limited to: murder, murder for hire, arson, identity theft, computer hacking, wire fraud, white slavery, kidnaping, staged traffic accidents, jury tampering, election fraud, intimidation at polling places, corruption of public officials, financing of street gangs, insurance fraud, and perpetuation of religious intolerance. (Complaint at 3:13–28.) Plaintiff asks the Court to order an investigation into the CCE and its activities.

With regard to McAdam specifically, however, the complaint brings two groups of claims against him. First, the complaint alleges McAdam participated in the CCE's conspiracy in several discrete ways. Second, it alleges he committed wrongs against Plaintiff by denying his writ of coram nobis and otherwise committing injustices from the bench.

**II.     Legal Standards**

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of the pleadings. *Navarro v. Block*, 250 F.3d 729, 731 (9th Cir. 2001). In ruling on a motion to dismiss, the Court accepts all allegations of material fact as true and construes the pleadings in the light most favorable to the nonmoving party. *Williams ex rel. Tabiu v. Gerber Products Co.*, 523 F.3d 934, 938 (9th Cir. 2008) (citation omitted). The Court does not assume the truth of legal conclusions merely because they are cast in the form of factual allegations. *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981). Nor will the Court supply essential elements of the claim that were not initially pled. *Ivey v. Bd. of Regents of University of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982). Vague and conclusory allegations of official participation in civil rights violations are insufficient to withstand a motion to dismiss. *Id.*

The Court is obliged to examine its own jurisdiction, *sua sponte* if necessary. *B.C. v. Plumas Unified Sch. Dist.*, 192 F.3d 1260, 1264 (9th Cir. 1999).

### III.    Discussion

Defendant McAdam has raised the defenses of judicial immunity, the *Heck v. Humphrey* doctrine, Eleventh Amendment immunity, and sovereign immunity. He contends the complaint should be summarily dismissed as abusive, and because Plaintiff has engaged in judge-shopping. He argues Plaintiff cannot state a claim for conspiracy. He also argues abstention is appropriate, although, as discussed below, this is in fact a jurisdictional argument based on the *Rooker-Feldman* doctrine.

Plaintiff charges Lieb and the CCE generally with a great deal of wrongdoing, but his allegations against McAdam specifically are more limited. Plaintiff says McAdam caused him only two injuries as a result of McAdam's alleged participation in the CCE.

First, he says McAdam followed the CCE's orders to deny his writ of coram nobis. (Comp. at 10:22–27.) The complaint alleges the conspirators forced McAdam to do this, just as they force him to continue to commit criminal acts from the bench. (*Id.*) Plaintiff's theory is that this makes McAdam an "accessory to the attempted murder." (*Id.*) Elsewhere he says Defendant Lieb bribed McAdam to deny the writ. (*Id.* at 5:6–8.) Plaintiff makes other general allegations that McAdam used his judicial position for racketeering purposes, contending that McAdam and Lieb together "use actors, make-up artists, identity theft, staged auto accidents, violence, the threat of violence and murder on an unprecedented scale." (Compl., 4:9–11; *see also id.* at 4:21–28,, 5:18–25 (making similar charges).) Because Plaintiff has described these acts throughout his pleadings as having taken place in connection with his criminal prosecution and civil litigation,[1] it is apparent he is claiming McAdam committed acts of injustice in his judicial capacity by ruling against him.

---

[1] *See, e.g.,* Compl. at 5:28–6:8 (describing purported attempt on Plaintiff's life by an elderly man armed with a "sword"), 8:1–4 (charging Lieb with having "paid an actress and make-up artist" to impersonate an eyewitness at his civil trial); 8:11–20 (charging Lieb and the elderly man with using false identification and committing identity fraud); 4:15–20 (alleging his mother was the target of a staged automobile accident aimed at preventing him from litigating his previous case in federal court).

Second, Plaintiff says McAdam interfered with his business, costing him $100,000 in legal expenses. (Compl. at 8:22–9:17.) He alleges McAdam, together with Lieb, paid con artists to harass him and somehow interfere with his telephone communications. (Compl. at 9:3–7.) He also alleges McAdam helped Lieb place a lien on his property. (*Id.* at 9:14–15.) These actions, however, were also allegedly done in connection with the state court litigation; apparently what Plaintiff is referring to is attorneys' fees in connection with the state court action, service of process, discovery and enforcement of judgment.

The complaint is disordered and its logic is difficult to follow at times. Much of it is obviously predicated on Plaintiff's belief that in various settings, unnamed people are listening in on his phone calls, staring at him, following him, watching him, and plotting against him. No reason is given for the conspiracy's having targeted him as opposed to some other person. He believes it is this extensive conspiracy that is responsible for his medical consulting business dropping off, and for judicial rulings adverse to him.

Giving the complaint a fair and liberal reading, it is apparent Plaintiff is charging McAdam with making corrupt judicial rulings against him. Plaintiff interprets this as McAdam's attempt to protect and help Lieb as well as the CCE in their scheme to destroy him. McAdam's role, in other words, is allegedly to be the corrupt judge who helps the CCE escape justice. (Compl., 7:6–9 ("The CCE brought in McAdam to protect Lieb and [the elderly man] under color of right . . . ."), 7:15–16 (describing McAdam's and Lieb's alleged concerted work to obstruct justice), 10:21–27 (describing McAdam's task in the CCE as denying the writ of coram nobis and committing "more illegal acts from the bench"); 11:3–11 (alleging Lieb and McAdam protect CCE members accused of murder and staged automobile accidents). Others, unknown to Plaintiff, direct the CCE. (Mot. for Disc. Conf. (Docket no. 30), 2:16–17.)

Defendant McAdam's request for judicial notice of state court records (Docket no. 5-3) is **GRANTED**. *U.S. ex rel Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992); Fed. R. Evid. 201.

/ / /

### A.   *Rooker-Feldman* Doctrine

The Court must consider jurisdictional issues first, before proceeding to other defenses. *Philips v. Bowles*, 2008 WL 205479, slip op. (9th Cir. Jan. 24, 2008) (citing *Elwood v. Drescher*, 456 F.3d 943, 948 (9th Cir. 2006)). The Court therefore first turns to the *Rooker-Feldman* doctrine, which is jurisdictional.[2] *Noel v. Hall*, 341 F.3d 1148, 1154-55 (9th Cir.2003). The *Rooker-Feldman* doctrine prevents the Court from considering *de facto* appeals from state-court judgments rendered before this action commenced. *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).

In his prayer for relief, Plaintiff requests all criminal charges and convictions against him be dismissed and the civil case likewise be dismissed.[3] (Compl. at 9:20–24.) To the extent Plaintiff argues he was harmed by Judge McAdam's allegedly incorrect rulings or any other rulings by state courts, including the state court's improper assignment of McAdam to the case or McAdam's failure to recuse, *Rooker-Feldman* prevents this Court from considering his claims. *Bianchi v. Rylaarsdam*, 334 F.3d 895, 901–02 (9th Cir. 2003).

*Rooker-Feldman* does not bar suits for alleged fraud on the court by adverse parties. *Kougasian v. TMSL, Inc.* et al., 359 F.3d 1136, 1140-41 (9th Cir.2004). Therefore, *Rooker-Feldman* does not bar claims for extrinsic fraud against Defendant Lieb, but it does not follow he may bring the same claims against Judge McAdam. The Court may consider Plaintiff's claims only if they are not "inextricably intertwined" with the question of whether the state

///

---

[2] The rule announced in *Humphrey v. Heck*, 512 U.S. 477, 486–87 (1994) prevents 42 U.S.C. § 1983 plaintiffs from bringing suits that would imply the invalidity of their underlying conviction. Although Plaintiff did not cite § 1983 as a basis for his claims, the Court construes *pro se* pleadings liberally. The Ninth Circuit has not expressly ruled whether the *Heck* bar is jurisdictional, although the Circuit appears to hold the view it is not. *Guerrero v. Gates*, 442 F.3d 697, 704 (9th Cir. 2006) (quoting *Heck*, 512 U.S. at 484, for the principle that "'termination of the prior criminal proceeding in favor of the accused' is a necessary element for a successful § 1983 malicious prosecution claim"). Other circuits hold it is not jurisdictional. *See, e.g., Okoro v. Bohman*, 164 F.3d 1059, 1061 ("[T]he *Heck* defense is not jurisdictional.") (citations omitted) *and Beck v. City of Muskogee Police Dept.*, 195 F.3d 553, 557 (10th Cir. 1999) (holding *Heck* bar delays accrual of a cause of action until the conviction or sentence has been invalidated).

[3] Because judgment in both cases is now final, apparently Plaintiff seeks vacatur rather than dismissal.

court decisions were legally erroneous. *Ignacio v. Judges of U.S. Court of Appeals for Ninth Circuit*, 453 F.3d 1160, 1166 (9th Cir.2006) (citing *Noel*, 341 F.3d at 1157).

*Rooker-Feldman* bars Plaintiff from seeking vacatur of the state court judgments. *Bianchi*, 334 F.3d at 900 n.4 ("*Rooker-Feldman* bars federal adjudication of any suit in which a plaintiff alleges an injury based on a state court judgment and seeks relief from that judgment . . . .") *Rooker-Feldman* also bars suits seeking relief on the theory that state court judgments were improper or unconstitutional. *Id.* at 901.

To the extent Plaintiff is seeking damages because the state court judgment was wrong — which the complaint does not make clear — *Rooker-Feldman* likewise bars the claims. *Fontana Empire Center, LLC v. City of Fontana*, 307 F.3d 987, 992 (9th Cir. 1992) (citing *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 25 (1987) (Marshall, J., concurring)). He may also be attempting to reverse the judgment against him in the civil action, by measuring his damages in part by the state court's award; this is likewise barred. *Id.* (citing *Charchenko v. City of Stillwater*, 47 F.3d 981, 983 (8th Cir. 1995). This is not to say, however, *Rooker-Feldman* necessarily bars claims for nominal damages, which may be available to vindicate deprivation of procedural due process rights even in the absence of actual damage. *Carey v. Piphus*, 435 U.S. 247, 266 (1978) (holding that nominal damages are available to vindicate deprivations of certain procedural due process rights, even in the absence of actual injury).

*Rooker-Feldman* thus largely, but not completely, deprives the Court of jurisdiction over claims arising out of state court judgments.

**B.     Standing**

Although Defendant McAdam has not raised this issue, Article III standing is a jurisdictional matter and the Court must therefore raise this issue *sua sponte*.

Besides McAdam's allegedly erroneous rulings, Plaintiff has alleged Defendants belonged to the CCE and that the CCE's members committed a string of varied crimes and wrongdoing beginning in Chicago in 1969.

/ / /

With regard to most of the crimes, Plaintiff has pleaded no facts showing who, if anyone, suffered any injury in fact sufficient to support standing. *See Moke v. United States*, 235 Fed.Appx. 681, 682 (9th Cir. 2007) (citing *Arakaki v. Lingle*, 477 F.3d 1048, 1059 (9th Cir. 2007)) (explaining that standing requires an injury in fact). The pleadings make clear this lengthy crime spree had no direct effect on Plaintiff at all. Rather, Plaintiff alleges, Defendants Lieb[4] and McAdam "pose a threat to the judiciary of the state of California and a clear and present danger to the security of [t]he United States of America." (Compl. at 13:18–21.) To the extent Plaintiff is attempting to litigate the rights of others, he lacks prudential standing. *Planned Parenthood of Idaho, Inc. v. Wasden*, 376 F.3d 908, 917 (9th Cir. 2004) ("As a prudential matter, even when a plaintiff has Article III standing, we ordinarily do not allow third parties to litigate on the basis of the rights of others.")

While Plaintiff has alleged more extensive involvement by Lieb, the only harm he says McAdam's actions caused him arose out of McAdam's actions taken in his judicial capacity.

Ordinarily, the Court would at this point order Plaintiff to show cause why his conspiracy claims should not be dismissed for failure to invoke the Court's jurisdiction, and, if appropriate, he would be given leave to amend his complaint. Such an order might well separate out the allegations individually, explaining why Plaintiff might or might not have standing to raise each claim. Because, however, it is clear the complaint cannot be saved by amendment, Plaintiff will not be given leave to amend.

**C.    Mootness**

A claim is moot when the Court lacks the power to grant the relief requested. *Picrin-Peron v. Rison*, 930 F.2d 773, 775 (9th Cir. 1991). The Court lacks jurisdiction to decide moot claims. *DeFunis v. Odegaard*, 416 U.S. 312, 316 (1974) (holding federal courts lack power to decide moot questions).

/ / /

---

[4] The caption names "Jack Lieb Esq. & Ass." [sic], and defines "Lieb" as Jack Lieb & Associates, a law firm in which Jack Lieb and R. Fahey practice. (Compl., ¶ 2.) Throughout the remainder of the Complaint, however, the allegations refer to "Lieb" as an individual, apparently meaning Jack Lieb. This order uses the designation "Lieb" for this Defendant.

In large part, this action appears to be driven by Plaintiff's belief that the CCE needs to be investigated and prosecuted and the erroneous idea that a civil action is the proper way to accomplish this. In his prayer for relief, Plaintiff asks the Court to order "Full [f]ederal investigation of the CCE" and "Investigation into the death of Abigail Dickson and disappearance of key witnesses." (Compl., 10:4–6.) Plaintiff completely mistakes the role of federal courts. No party to this case has the ability or authority to conduct criminal investigations, so there is no one the Court could require to investigate these matters. *See Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 112 (1969) (explaining that court may only enjoin parties or non-parties with notice who are shown to be in active participation with defendants). Furthermore, decisions regarding whether criminal investigation is merited are the within the power of the executive branch, not the judiciary. *Heckler v. Chaney*, 470 U.S. 821, 832 (1985).

To the extent Plaintiff seeks an investigation of the CCE or any other alleged criminal matter, this Court lacks the power to grant him the relief he requests, and such claims are moot.

**D.    Judicial Immunity**

Although not clearly stated, in light of all the pleadings it is apparent Plaintiff is attacking his state criminal and civil judgments. To some extent his claims are barred by *Rooker-Feldman*, as discussed above.

Plaintiff's claims against McAdam arise from actions taken in his judicial capacity. Judges are "are not liable to civil actions for their judicial acts, even when such acts are in excess of their jurisdiction, and are alleged to have been done maliciously or corruptly." *Stump v. Sparkman*, 435 U.S. 349, 355–56 (1978) (quoting *Bradley v. Fisher*, 80 U.S. 335, 347 (1871)). Assuming all Plaintiff's contentions about Lieb and the CCE having bribed or otherwise influenced Judge McAdam to make corrupt and unjust rulings were true, McAdam would be entitled to judicial immunity even though Lieb would not. *Dennis v. Sparks*, 449 U.S. 24, 28–29 (1980).

/ / /

### E.  Other Defenses

The previous rulings dispose of all Plaintiff's claims, so the Court need not analyze other defenses such as the *Heck* bar in any detail. For purposes of considering whether Plaintiff's complaint could be saved by amendment, however, the Court notes *Heck* bars claims that would impugn the validity of his conviction in state court. *Smith v. City of Hemet*, 394 F.3d 689, 696 (9th Cir. 2005).

### F.  Abuse of Judicial Process

In his previous case, *Arnell v. McAdam*, 07cv743-LAB (RBB), Plaintiff was ordered to pay $3500 in monetary sanctions, which he did. On August 9, 2007 he withdrew his complaint voluntarily, claiming he needed to investigate Judge McAdam's corrupt activities further, and also claiming he was intimidated after his mother was nearly killed in a staged automobile accident. Eight months later, on March 10, 2008, Plaintiff filed an expanded but little more coherent complaint in this case without informing the Court of the earlier case. Indeed, in this complaint, Plaintiff misdescribes the earlier case as having ended with a default, claiming "The federal court ruled that McAdam failed to answer the complaint." (Compl. at 4:12–20.) Although the details make clear Plaintiff is referring to *Arnell v. McAdam*, the false detail of the case's disposition is misleading, suggesting that Plaintiff prevailed against McAdam earlier. The complaint in this case does not provide the number, caption, or any other clear identifying information from the previous case.

In the earlier case, Plaintiff successfully sought the voluntary recusal of two district court judges assigned to the case, though the recusals were not for the reasons Plaintiff represented. *See Arnell v. McAdam*, 2007 WL 2021826, slip op. at *2 (S.D.Cal., July 10, 2007). Plaintiff then filed three successive motions for Judge Burns' recusal, and after these failed and he was ordered to appear at a hearing to show cause why he should not be sanctioned, he withdrew his complaint. During the course of the proceedings, two of Plaintiff's abusive filings were stricken and Plaintiff was ultimately sanctioned. McAdam's motion to dismiss was denied as moot after Plaintiff voluntarily withdrew his complaint; the Court had no reason to find him in default.

After Plaintiff filed his complaint in the case at bar, Judge McAdam filed a notice of related case as required under Civil Local Rule 40.1(e) correctly pointing out the new complaint arose from the same events and involved the same parties and issues as the old. Plaintiff then, without leave, filed a reply to the notice of related case in which he claimed the notice of related case was unnecessary because he had already notified the court (Reply to Notice of Related case at 2:6–7.) He then denied the cases were closely related, alleging the case was almost entirely different from the previous one and he was not attempting to relitigate the old one. (*Id.* at 2:22–28, 3:19.) He then stated he did not want Judge Burns assigned to the case (*id.* at 3:1–9, 3:21–22), and accused McAdam of judge-shopping. (*Id.* at 3:15, 3:27.)

In spite of Plaintiff's efforts, a notice of related case was prepared and this case was transferred, pursuant to Civil Local Rule 40.1(h), to Judge Burns.

Plaintiff has never adequately explained why he was too fearful of the CCE to maintain his claims in the previous action but months later filed a new complaint directly attacking it. Plaintiff repeatedly attempted to veto the assignment of district court judges, then by withdrew and refiled his claims. This, coupled with what was apparently an attempt to disguise the case he had brought earlier, and his admitted intention of having some judge other than Judge Burns assigned to this case all strongly suggest he was seeking to choose a judge of his liking who was unfamiliar with his earlier filings.

In reply to the motion to dismiss, Plaintiff only briefly argues against dismissal for judge-shopping:

> The allegation of "judge shopping" cannot apply to this case and was not raised in the previous case. Resurrection of the previous case for that purpose is forbidden by *Lipman v. Dye* [294 F.3d 17 (1st Cir. 2002)].

(Am. Opp'n to Mot. to Dismiss at 3:19–21.) The argument that McAdam should have raised the issue of judge-shopping before it was apparent is illogical, and the citation is inapposite. This fails to rebut McAdam's charge.

Judge-shopping is an abuse of the judicial process and is therefore sanctionable behavior. *Hernandez v. City of El Monte*, 138 F.3d 393, 398–99 (9th Cir. 1998) (citing *Oliva*

*v. Sullivan*, 958 F.2d 272, 273 (9th Cir. 1992), *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-45 (1991)) ("Judge-shopping clearly-constitutes 'conduct which abuses the judicial process.'"). The Court finds Plaintiff has engaged in judge-shopping and in these two cases the result has been considerable waste of judicial resources.

Plaintiff has also aggressively sought pointless and burdensome discovery against parties and non-parties. As discussed in the Court's order to show cause why Defendant Lieb should not be dismissed, issued August 22, 2008, Plaintiff failed to serve this Lieb with process. His sole attempt at service occurred after someone identifying himself as Lieb called Plaintiff and offered to appear at a bank to accept service. Plaintiff claims the man who appeared was not Jack Lieb but rather someone who had stolen Jack Lieb's identity. He fruitlessly spent weeks trying to persuade bank officers to turn over surveillance tape so the FBI could investigate the alleged identity theft. He then twice sought an order requiring the bank to turn over its surveillance tape, which Magistrate Judge Ruben Brooks twice denied. As Judge Brooks' order of denial explained, this was irrelevant to the case and would not assist Plaintiff in serving Lieb with process.

Since that time, Plaintiff has filed a motion for a discovery conference (Docket no. 30), currently on calendar before Judge Brooks for hearing on September 29. The wide-ranging discovery he seeks is essentially equivalent to a full-scale investigation of the alleged CCE, which he now alleges is a trans-national organization threatening the security of the United States. The motion shows he does not know who is leading or involved in the alleged CCE, nor does he know the identity of any victims. The motion makes clear Plaintiff intends to obtain a vast amount of information from McAdam. Although Plaintiff and McAdam's counsel have spoken over the phone, Plaintiff has repeatedly insisted on personally meeting with her, which she has refused to do. (Exhibits 1 and 2 in Supp. of Pl.'s Mot. for Disc. Conf.)

Plaintiff's pleadings in this case and the previous one have also been inconsistent in numerous key points, without explanation, and his allegations are increasingly fantastic. His earlier complaint, for example, mentioned conspiracy, but focused on a neighborhood

dispute involving the owner or former owner of the neighboring house and her husband or fiancé. Neither of their identities was seriously disputed, although Plaintiff suspected the husband inaccurately identified himself and his address. The current complaint is now alleging the neighboring property owner and her husband were actually other people: a cunningly made-up actress allegedly impersonated the property owner on the witness stand, and the husband was merely the persona of a CCE operative sent to assassinate Plaintiff.

The Court's order dismissing Defendant Lieb (Docket no. 34) notes other inconsistencies. Furthermore, the trend is not, as it is in most cases, to winnow out the chaff and abandon weak and flawed arguments. Rather, the allegations and legal theories grow more quixotic with each iteration.

**G.     Leave to Amend**

If there were any reason to think Plaintiff might be able to amend his complaint to state a claim, the Court would ordinarily give him an opportunity to do so. *See Weilberg v. Shapiro*, 488 F.3d 1202, 1205 (9th Cir. 2007) (citation omitted).

Here, however, Plaintiff has filed two complaints bringing essentially the same claims against Defendant McAdam. Furthermore, his complaint, as before, is fanciful and inconsistent within itself and with other pleadings, and it is clear he cannot cure its deficiencies by amendment.

But finally, it is apparent Plaintiff has abused the judicial process by engaging in judge-shopping and filing misleading pleadings to cover this up. Defendant McAdam raised this by motion, Plaintiff has had an opportunity to respond, and the Court finds his response inadequate. Permitting this litigation to continue in some mutated form after amendment would needlessly and unfairly burden Defendants.

**IV.    Conclusion and Order**

For these reasons, Plaintiff's claims against Defendant McAdam are **DISMISSED** and the complaint is **DISMISSED WITHOUT LEAVE TO AMEND**. All pending dates in this matter are **VACATED AS MOOT** and all pending motions are **DENIED AS MOOT**. Except for pleadings specifically provided for under the Federal Rules of Civil Procedure or Federal

Rules of Appellate Procedure, or other applicable law, Plaintiff shall file no more documents in this case.

**IT IS SO ORDERED**.

DATED: September 8, 2008

*[signature: Larry A. Burns]*

**HONORABLE LARRY ALAN BURNS**
United States District Judge